UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LETICIA GOMES V.S.,[1]

Petitioner,

v.

SERGIO ALBARRAN,[2] et al.,

Respondents.

No. 1:26-cv-00087-TLN-AC

**ORDER**

This matter is before the Court on Petitioner Leticia Gomez V.S.'s ("Petitioner") Motion for Temporary Restraining Order ("TRO"). (ECF No. 2.) Respondents filed an opposition. (ECF No. 8.) Petitioner replied. (ECF No. 9.) The Court asked the parties to state their position on whether to hold a hearing (ECF No. 5) and neither party requested a hearing. Based on

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only her first names and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

[2] Respondents ask the Court, via footnote, to dismiss all respondents other than the facility administrator. (ECF No. 8 at 1 n.1.) Petitioner objected. (ECF No. 9 at 1 n.1.) The request, as made, is improper. If Respondents seek to dismiss other respondents from this action, they must do so in a properly noticed motion. *See Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025).

1

Respondents' designation of their brief as opposing both a TRO and preliminary injunction and because the standards for TROs and preliminary injunctions are "substantially identical," *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), the Court considers whether a preliminary injunction should issue. For the reasons set forth below, Petitioner's motion is GRANTED and the Court issues a preliminary injunction.

## I. FACTUAL BACKGROUND[3]

Petitioner is a native and citizen of Brazil and an asylum applicant in the United States. (ECF No. 2 at 2, 3.) On October 1, 2024, Petitioner was detained by immigration authorities after arriving to the United States. (*Id*. at 3.) On October 24, 2024, immigration officials conducted an interview with Petitioner where they determined: Petitioner had a credible fear of persecution; she was not a danger to the community; nor was she a flight risk. (*Id.* at 2; ECF No. 2-2 at 5.) She was then released on parole, under 8 U.S.C. § 1226, on an order of release on recognizance. (ECF No. 2 at 3.) She was also provided a notice to appear at an immigration court date on March 20, 2028. (*Id.*)

For the next thirteen months, Petitioner complied with the conditions of her release.[4] (*Id.* at 2.) During that time, she built a life in San Mateo County: residing with her sister, working to clean houses, participating as an active member in her local church, and building friendships and relationships. (*Id.* at 4.) Nevertheless, on December 20, 2025, at an ICE check-in, Petitioner was detained by ICE without notice, an opportunity to be heard, and while separated from her counsel who had accompanied her to the check-in. (*Id.*; ECF No. 2-1.)

Petitioner now challenges the lawfulness of her civil detention and seeks immediate release. (*See* ECF Nos. 1, 2.)

---

[3] The instant factual background is taken largely verbatim from Petitioner's brief in support of her motion for TRO. (ECF No. 2.) Respondents do not dispute these facts. (*See* ECF No. 8.)

[4] Petitioner says she confused one ICE check-in date, but then presented herself at an ICE office within 72-hours of the missed check-in. (ECF No. 2 at 4.) Respondents do not argue that Petitioner violated the conditions of her release. (*See* ECF No. 7.) In any event, one such nominal indiscretion and prudent correction does not warrant a legitimate basis for detention. *See*, *e.g.*, *Bernal v. Albarran*, No. 25-CV-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025) (finding detention of asylum applicant improper under § 1226(a), even if she violated the conditions of her release, because she was not a danger to society or a flight risk).

**II.     STANDARD OF LAW**

For TROs and preliminary injunctions, courts consider whether a petitioner has established "[1] that [s]he is likely to succeed on the merits, [2] that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [her] favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO or preliminary injunction, even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for injunctive relief. *Id.* at 1134–35.

**III.     ANALYSIS**

A.     <u>Likelihood of Success on the Merits</u>

Petitioner has established a likelihood of success on her claims that her detention violates the Fifth Amendment Due Process Clause. The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### i. Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in her continued freedom after she was released from immigration custody in 2024. (ECF No. 2 at 3.) Under *Morrisey*, this release implied a promise that she would not be re-detained, during the pendency of her immigration proceedings through her hearing date in 2028, if she abided by the terms of her release. For over a year, Petitioner substantially complied with the conditions of her release and kept ICE apprised of her whereabouts. (ECF No. 2 at 4.) Further, Respondents do not assert Petitioner violated any laws or has a criminal history. (*See* ECF No. 8.) During the period of her release, Petitioner built a life in the United States, working, building and fostering relationships, and participating in her community and local church. (ECF No. 2 at 4.) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a

1  clear interest in her continued freedom as she awaits the outcome of her immigration proceedings.
2  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's
3  actions in allowing petitioner to remain in the community for over five years strengthened
4  petitioner's liberty interest).

5        Respondents' argument that Petitioner is subject to mandatory detention under
6  § 1225(b)(1) does not change this Court's analysis.  (ECF No. 8 at 1–2.)  Section 1225(b)(1)
7  provides a process for detention and expedited removal of certain noncitizens "arriving in the
8  United States and certain other [noncitizens] who have *not been* admitted or *paroled*."  8 U.S.C.
9  § 1225(b)(1) (emphasis added).  Here, Petitioner states she was paroled into the United States on
10 October 24, 2024, and remained on parole until her challenged detention.  (ECF No. 2 at 2.)
11 Respondents' argument that § 1225(b)(1) expedited removal procedures apply to Petitioner thus
12 fails.

13       Moreover, courts nationwide, including this Court, have overwhelmingly rejected the
14 Government's new interpretation of the Immigration and Nationality Act, under which certain
15 noncitizens are being subjected to mandatory detention under § 1225(b).  This Court has already
16 joined the majority of courts in holding that noncitizens who have already entered the United
17 States and are residing here at the time ICE detains them, like Petitioner, are not "applicants for
18 admission" subject to § 1225(b).  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB,
19 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025).  The Court's position on this matter is clear
20 and it has no reason to reconsider it.[5]  Thus, Petitioner's liberty interest remains strong.

21                 *ii.  Procedures Required*

22       As to the second step — what procedures or process is due — the Court considers three
23 factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an
24 erroneous deprivation of such interest through the procedures used, and the probable value, if any,
25 of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

---

[5]     Having found Petitioner is not subject to 8 U.S.C. § 1225(b)(1), the Court agrees with Petitioner that she is instead subject to 8 U.S.C. § 1226(a) and entitled to the process that statute demands, as this Court has repeatedly found. *See, e.g.*, *Morales-Flores*, 2025 WL 3552841, at *3.

the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established her due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner was out of custody for thirteen months and built a life. Despite that, Petitioner has now been detained without any notice or opportunity to be heard. She is unable to work, be with her family, or foster relationships. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by her detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. (*See* ECF No. 2.) Also, Petitioner was not provided any notice for her detention, and she was separated from her counsel at the time that her interview and detention occurred. (*See* ECF No. 2-2.) Petitioner asserts that she complied with all conditions of her release and has never been arrested. (ECF No. 2 at 4.) Indeed, Petitioner's effort to comply led to her detention, as she was arrested at an ICE office, where she presented herself. (*Id.*) Thus, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of her liberty interest. Without any procedural safeguards to determine whether her detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a

1 noncitizen presents a risk of flight or danger to the community.") (cleaned up).

2 Here, Petitioner's asylum case is ongoing and there is no final order of removal. (*See* ECF No. 2.) Additionally, before releasing her in 2024, immigration authorities determined Petitioner was not a danger to the community nor a flight risk and, in the subsequent thirteen months, Petitioner maintained contact with ICE. (*Id.* at 4.) Moreover, Respondents do not contend that Petitioner violated any laws, was a danger to the community, or a flight risk, nor that any facts should alter authorities' original findings. (*See* ECF No. 8.) Therefore, on these facts, the Court cannot find any legitimate interest for Respondents to detain Petitioner.

9 Additionally, the cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for Respondents. Indeed, these are the very processes owed to Petitioner under § 1226(a), which Petitioner contends, and this Court finds, applies to Petitioner. Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. Moreover, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on her immigration proceedings than to continue to detain her. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

18 The Court finds that, under these circumstances, Respondents are required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Here — where Petitioner has substantially complied with the conditions of her release, has been previously determined not to be a flight risk or a danger, has never been arrested, and removal is not reasonably foreseeable — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.

28 On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to

1  pre-deprivation notice and hearing to determine whether detention was warranted. Respondents
2  did not provide either. Nor did they provide post-deprivation process. Accordingly, with respect
3  to her procedural due process claim, Petitioner has shown she is likely to succeed on the merits.

           B.        Irreparable Harm

5  Petitioner has also established she will suffer irreparable harm in the absence of injunctive
6  relief. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to
7  immigration detention," including "subpar medical and psychiatric care in ICE detention
8  facilities, the economic burdens imposed on detainees and their families as a result of detention,
9  and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here.
10 Without relief, Petitioner faces the prospect of significant additional time in detention and
11 continued harm while she awaits a decision on her immigration case. Moreover, "[i]t is well
12 established that the deprivation of constitutional rights 'unquestionably constitutes irreparable
13 injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427
14 U.S. 347, 373 (1976)). Thus, Petitioner has sufficiently established irreparable harm.

           C.        Balance of Equities and Public Interest

16 As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the
17 balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F.
18 Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092
19 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. First, the balance of equities
20 tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed
21 in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S.*
22 *Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public
23 interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.
24 Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention
25 are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June
26 14, 2025) (internal citation omitted). Any burden imposed by requiring Respondents to release
27 Petitioner from unlawful custody and refrain from re-detention unless and until they comply with
28 constitutionally required process is both *de minimis* and clearly outweighed by the substantial

harm Petitioner will suffer if she continues to be detained. In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's request for injunctive relief and orders Petitioner's immediate release on the same terms as she was released prior to her detention. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

### IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is GRANTED and, for the reasons discussed above, the Court issues a preliminary injunction.

2. Respondents must IMMEDIATELY RELEASE Petitioner Leticia Gomes V.S. from custody on the same conditions under which she was paroled prior to her current detention. Respondents shall not impose any additional restrictions on her, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where Respondents show: (a) material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

4. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the preliminary injunction on two days' notice to Petitioner. Fed. R. Civ. P. 65(b)(4).

5. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

6. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initials.

7. This matter is referred to the United States Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Date: January 11, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE